UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARVIN J., | NO: 4:17-CV-5123-TOR |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT are the parties' cross motions for summary

judgment. ECF Nos. 10, 14. Chad Hatfield represents Plaintiff. Daphne Banay

represents Defendant. The Court has reviewed the administrative record and the

parties' completed briefing and is fully informed. For the reasons discussed below,

the Court grants Defendant's motion and denies Plaintiff's motion.

//

//

# JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g), 1383(c)(3).

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i);

416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c); 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"),

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work, and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c); 416.960(c)(2); *see Tackett*, 180 F.3d at 1098-99.

## ALJ'S FINDINGS

Plaintiff filed applications for disability insurance benefits and supplemental security income disability benefits on August 29, 2013 and September 30, 2013, respectively. Tr. 160-173. These applications were denied initially and upon reconsideration, and a hearing was requested. Tr. 115-18, 121-22, 123-24, 125-26. A hearing was held before an Administrative Law Judge on October 22, 2015. Tr. 39-72. The ALJ rendered a decision denying Plaintiff benefits on April 22, 2016. Tr. 20-30.

The ALJ found that Plaintiff met the insured status requirements of Title II of the Social Security Act through December 31, 2016. Tr. 22. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 1, 2013, the alleged onset date. *Id*. At step two, the ALJ found that Plaintiff had the following severe impairments: asthma; chronic obstructive pulmonary disease; history of lobectomy; loss of left eye; sleep apnea; and, hiatal

hernia. *Id.* At step three, the ALJ found that Plaintiff's severe impairments did not meet or medically equal a listed impairment. Tr. 23-24. The ALJ then determined that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and
> 416.967(b) except he can occasionally climb stairs and should not
> climb ladders. He can frequently balance, kneel and crawl and
> occasionally stoop and crouch. The claimant should avoid
> concentrated exposure to extreme cold, heat and vibration. He should
> avoid even moderate exposure to fumes, odors, dusts, gases and poor
> ventilation. The claimant should avoid even moderate exposure to
> hazards such as moving machinery and unprotected heights. He can
> perform tasks requiring depth perception on an occasional basis and
> has limited field of vision on the left.

Tr. 24. At step four, the ALJ found that Plaintiff was unable to perform past relevant work as a cement mason. Tr. 28. At step five, after considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that Plaintiff was capable of performing in representative occupations, such as small parts assembler, cafeteria attendant, and mailroom clerk, which exist in significant numbers in the national economy. Tr. 29-30. On that basis, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act. *Id.*

The Appeals Council denied Plaintiff's request for review on October 7, 2015, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. Tr. 1-3; 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits and supplemental security income disability benefits under Title II and Title XVI of the Social Security Act. Plaintiff raises four issues for review:

(1) Whether the ALJ properly weighed the medical opinions of Plaintiff's treating physician, Dr. Evan D. Schmitz;

(2) Whether the ALJ properly evaluated Plaintiff's alleged impairments at step two;

(3) Whether the ALJ properly evaluated Plaintiff's subjective complaints;

(4) Whether the ALJ properly evaluated Plaintiff's capability to perform work in the national economy at step five.

ECF No. 10 at 5. The Court evaluates each issue in turn.

**DISCUSSION**

**A. Opinions of Dr. Evan D. Schmitz**

Plaintiff faults the ALJ for improperly discounting the opinions of Dr. Evan D. Schmitz. ECF Nos. 10 at 8-12; 15 at 1-4. Specifically, Plaintiff argues the ALJ did not provide adequate reasons to reject Dr. Schmitz's two separate opinions that Plaintiff was more physically limited than the ALJ determined. ECF No. 10 at 12.

In analyzing an ALJ's weighing of medical evidence, a reviewing court distinguishes between the opinions of three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, the opinion of a treating physician carries more weight than the opinion of an examining physician, and the opinion of an examining physician carries more weight than the opinion of a reviewing physician. *Id.* In addition, the Commissioner's regulations give more weight to opinions that are explained than to opinions that are not, and to the opinions of specialists on matters relating to their area of expertise over the opinions of non-specialists. *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* Regardless of the source, an ALJ need not accept a physician's opinion that is "brief, conclusory and inadequately

supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted).

On July 31, 2013, Dr. Schmitz completed a DSHS "Physical Functional Evaluation" form. Tr. 262-64. In the "Subjective" section of the form, Dr. Schmitz listed Plaintiff's chief complaints and reported symptoms as shortness of breath at rest, which worsened with minimal exertion; nocturnal dyspnea; history of right upper lobectomy; coccidioidomycosis; and pulmonary disease. Tr. 262. In the "Assessment" section, Dr. Schmitz described Plaintiff's diagnosis as uncontrolled asthma and history of lung resection, and estimated the severity of the diagnosis as follows: no significant interference with Plaintiff's ability to sit, significant interference with his ability to walk and see, very significant interference with his ability to lift, and the inability to carry. Tr. 263. In the following section on the form, which consists of a number of check boxes next to different categories of work capability, Dr. Schmitz checked the box next to "severely limited," defined as unable to meet the demands of sedentary work, and jotted a question mark next to the question about duration. Tr. 264 ("How long do you estimate the current limitation on work activities will persist with available medical treatment?"). In the "Plan" section, Dr. Schmitz noted that full pulmonary function testing and an HRCT scan of the chest was needed. *Id.*

On August 21, 2013, Dr. Schmitz examined Plaintiff during another office visit. Tr. 257-59. Dr. Schmitz noted that Plaintiff's symptoms had not changed since July 31, 2013. Tr. 257. Dr. Schmitz reported that the pulmonary function test revealed mild airways obstruction with a significant response to bronchodilator, lung volumes within normal limits, and normal diffusing capacity of the lungs. Tr. 258. He opined that the large hiatal hernia "may be the cause of most of [Plaintiff's] problems" and "appears to be limiting [Plaintiff's] ability to lift anything remotely heavy." *Id*. Dr. Schmitz concluded that "[e]xcessive strain may push his abdominal contents further into his chest and therefore lifting should be avoided." *Id*.

The ALJ assigned little weight to Dr. Schmitz's July 31, 2013 opinion that Plaintiff was unable to meet the demands of sedentary work and to Dr. Schmitz's August 21, 2013 opinion that Plaintiff should avoid all lifting. Tr. 27-28. Dr. Schmitz's opinions are inconsistent with the opinions of Dr. Drew Stevick and Dr. Charles Wolfe, both of whom found Plaintiff capable of performing light work. Tr. 28, 75-90, 93-103. As a contradicted opinion, the Court must determine whether the ALJ provided specific and legitimate reasons supported by substantial evidence in assigning the opinion little weight. The Court concludes the ALJ did provide specific and legitimate reasons.

1    The ALJ assigned little weight to Dr. Schmitz's July 31, 2013 opinion

2    because "[o]verall, the longitudinal medical record does not support the degree of

3    restriction Dr. Schmitz opined." Tr. 27.  The ALJ provided several reasons for

4    discounting Dr. Schmitz's opinion, including the following: (1) the July 31

5    examination was Dr. Schmitz's first time seeing Plaintiff and the office visit note

6    shows Dr. Schmitz was not certain of the etiology of Plaintiff's complaints; (2) Dr.

7    Schmitz had not yet seen the results of the pulmonary function test results, which

8    showed only mild airway obstruction and normal lung volumes; (3) imaging

9    showed the claimant's lungs were adequately expanded despite the hernia; and (4)

10   Plaintiff was not on any medication when he saw Dr. Schmitz on July 31, 2013,

11   and Plaintiff subsequently reported significant improvement in his breathing with

12   medication.  *Id.*

13       It is the ALJ's duty to resolve conflicting medical opinions.  *Thomas v.

14   Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002).  Moreover, when evaluating

15   conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that

16   opinion is brief, conclusory, and inadequately supported by clinical findings.

17   *Bayliss*, 427 F.3d at 1216.  Here, the ALJ set out a detailed and thorough

18   examination of the record and conflicting opinions, stated his interpretation of the

19   evidence, and made specific findings.  Tr. 27.  The ALJ concluded that Dr.

20   Schmitz's opinion was not adequately supported by clinical findings, it was

inconsistent with Plaintiff's imaging results and pulmonary function testing, and it was also in conflict with Plaintiff's reported improvements in his breathing with medication. Plaintiff disagrees with those conclusions and points to aspects of the record he argues support Dr. Schmitz's opinion. ECF Nos. 10 at 10-11; 15 at 2-3. Nevertheless, the ALJ's resolution of the conflicting opinions is reasonable and must be upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[T]he Commissioner's finding are upheld if supported by inferences reasonably drawn from the record . . . and if evidence exists to support more than one rationale interpretation, we must defer to the Commissioner's decision.").

Regarding Dr. Schmitz's August 21, 2013 opinion, the ALJ agreed that Plaintiff "should not engage in heavy lifting," but concluded that "Dr. Schmitz's opinion that the claimant should avoid lifting altogether is not supported by other medical opinion of record." Tr. 27. The ALJ noted that Plaintiff "engages in lifting in his daily life in addition to performing activities such as mowing the lawn." Tr. 28. Plaintiff argues that these are not specific and legitimate reasons to reject Dr. Schmitz's opinion. ECF No. 10 at 11-12. However, as discussed, an ALJ need not accept a physician's opinion that is inadequately supported by clinical findings. *Bayliss*, 427 F.3d at 1216. And, in resolving conflicting medical opinions, an ALJ may discount a doctor's opinion when it is inconsistent with a

claimant's activities. As the ALJ noted, Plaintiff reported that he did housework and yardwork, such as cleaning, laundry, household repairs, as well as mowing. Tr. 25. Because Dr. Schmitz's opinion was unsupported by clinical evidence and inconsistent with Plaintiff's daily activities, the ALJ's resolution of the conflicting opinions is reasonable.

In sum, the ALJ provided specific and legitimate reasons that are supported by substantial evidence to assign little weight to Dr. Schmitz's two opinions in favor of greater weight assigned to the conflicting opinions of Dr. Stevick and Dr. Wolfe.

### B. Step Two Analysis

Plaintiff asserts that the ALJ erred in failing to conclude at step two that he had the following significant impairments: history of rib fracture; malformation of the sternum; H. pylori, severe chronic active gastritis, GERD/uncontrolled reflux, diverticulosis, ulcers, colon polyps, anemia, internal hemorrhoids, dyspepsia, and cramping; osteoarthritis of multiple joints; allergic rhinitis; and migraines/headaches. ECF No. 10 at 13.

At step two of the five-step analysis, a claimant bears the burden of demonstrating that he has medically determinable physical impairments which (1) have lasted or are expected to last for a continuous twelve-month period and (2) significantly limit his ability to do basic work activities. 20 C.F.R. §§

416.920(a)(4)(ii), 416.920(c), 416.909.  An impairment does not limit an ability to do basic work activities where it "would have no more than a minimum effect on an individual's ability to work."  *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988).  The step-two analysis is "a *de minimus* screening devise to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (emphasis in original).

Here, the ALJ concluded that Plaintiff suffered from the following severe impairments: asthma, chronic obstructive pulmonary disease, history of lobectomy, loss of left eye, sleep apnea, and hiatal hernia.  Tr. 22.  Plaintiff argues that the ALJ ignored substantial and undisputed evidence of Plaintiff's *other* impairments, and failed to consider how these impairments, alone or in combination, affected Plaintiff's ability to perform basic work activities.  ECF No. 10 at 13.  Based on the relevant record, the Court concludes that the ALJ properly considered Plaintiff's other alleged impairments and relied on substantial evidence to support his finding at step two that those impairments did not more than minimally affect Plaintiff's work abilities for a continuous twelve-month period.

First, the ALJ considered Plaintiff's evidence of migraine headaches.  Tr. 22. The ALJ noted that Plaintiff's medical records made little mention of headaches and Plaintiff was not actively being treated for migraines.  *Id*.  The ALJ observed that although Plaintiff reported some headaches on January 8, 2015, Plaintiff

reported that his headaches had improved since he started using a CPAP on August 6, 2015. Tr. 455, 452 ("The patient stated that his headache improved tremendously since he started using the CPAP."). The ALJ concluded that Plaintiff's migraine headaches did not have more than a minimal effect on his ability to do basic work activities and was not a severe impairment. Tr. 22-23. This conclusion is supported by medical evidence in the record.

Second, the ALJ analyzed Plaintiff's history of gastroesophageal reflux disease (GERD) and Plaintiff's evidence of helicobacter pylori gastritis, duodenal ulcers, and GERD/nonerosive reflux disease. Tr. 23. Based on the medical evidence in the record, the ALJ concluded that these conditions did not significantly limit Plaintiff's functioning for twelve months and were therefore not severe impairments. *Id.* At his hearing, Plaintiff testified that he experienced a burning pain similar to heartburn, but located higher in his chest. Tr. 65. On August 21, 2013, Plaintiff reported episodes of choking and uncontrolled reflux, and was diagnosed with uncontrolled reflux. Tr. 259. However, a report dated October 21, 2013 confirmed that "the GERD symptoms have now completely resolved since [Plaintiff] tried lifestyle modification including dietary changes." Tr. 265. In that same report, Plaintiff stated that he had extremely rare heartburn symptoms, but never had abdominal pain or discomfort. *Id.* But, on January 14, 2014, Plaintiff reported that he had only occasional heartburn that he controlled

with his diet. Tr. 276. While an EGD performed on February 27, 2015 showed helicobacter pylori gastritis, duodenal ulcers, and GERD/nonerosive reflux disease, a subsequent EGD on June 24, 2015 showed the ulcers had healed and the gastritis was eradicated. Tr. 351, 394. On July 14, 2015, imaging showed only mild GERD. Tr. 422. The ALJ's finding that Plaintiff's GERD and related conditions did not significantly limit Plaintiff's functioning for twelve months is supported by substantial evidence.

Third, the ALJ considered Plaintiff's evidence of colon polyps and internal hemorrhoids. Tr. 23. At most, the medical evidence establishes that Plaintiff was diagnosed with colon polyp disease and internal hemorrhoids, and Plaintiff had colon polyps removed in December 2013 and June 2015. Tr. 324, 404. The medical records do not discuss or even suggest that Plaintiff was physically limited by either condition. The ALJ properly concluded that Plaintiff's medical evidence did not establish that these impairments "even minimally limit the claimant's ability to do basic work activities." Tr. 23.

Finally, the ALJ analyzed Plaintiff's claims of back, ankle, foot, and hand pain, as well as Plaintiff's evidence of osteoarthritis. Tr. 23. As the ALJ noted, Plaintiff's medical records make limited mention of back and joint paint. On September 23, 2014, Plaintiff reported bilateral hand pain, lower back pain, bilateral foot and ankle pain, and bilateral knee pain. Tr. 273. However, Plaintiff's

physical examination confirmed that Plaintiff's grip strength was normal and Phalen's and Tinel's were negative. *Id*. Plaintiff was not limping, he was able to perform heel and toe walks, straight leg raise was negative, there was no lumbar tenderness, and Plaintiff had a normal knee exam with good range of motion. *Id*. The record is absent of any imagining of Plaintiff's back, feet, ankles, or hands showing any skeletal problems. Imaging of Plaintiff's knees showed "very mild osteoarthritis," which was described as "[v]ery mild age-appropriate osteoarthritic changes in the knees." Tr. 308. The ALJ concluded that Plaintiff had no medically determinable impairment related to his complaints of back, ankle, foot, and hand pain, and found that the "very mild knee osteoarthritis" was not a severe impairment. *Id*. The ALJ's conclusion is supported by substantial evidence.

In short, the Court finds that the ALJ properly consider Plaintiff's other impairments and relied on substantial evidence to support his finding at step-two that those impairments did not more than minimally affect Plaintiff's work abilities for a continuous twelve-month period.

### C. Adverse Credibility Determination

Plaintiff contends that the ALJ failed "to provide clear and convincing reasons for making a negative credibility finding." ECF Nos. 10 at 15; 15 at 7-8. Plaintiff argues that the ALJ erred by (1) rejecting his testimony without identifying what testimony is discredited or why, and (2) rejecting,

mischaracterizing, and overlooking substantial medical evidence of record indicating disability. ECF No. 10 at 15.

In social security proceedings, a claimant must prove the existence of physical or mental impairment with "medical evidence consisting of signs, symptoms, and laboratory findings." 20 C.F.R. § 404.1508. A claimant's statements about his or her symptoms alone will not suffice. 20 C.F.R. §§ 404.1508; 404.1527. Once an impairment has been proven to exist, the claimant need not offer further medical evidence to substantiate the alleged severity of his or her symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). As long as the impairment "could reasonably be expected to produce [the] symptoms," 20 C.F.R. § 404.1529(b), the claimant may offer a subjective evaluation as to the severity of the impairment. *Id.* This rule recognizes that the severity of a claimant's symptoms "cannot be objectively verified or measured." *Id.* at 347 (quotation and citation omitted).

However, in the event an ALJ finds the claimant's subjective assessment unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas*, 278 F.3d at 958. In making such determination, the ALJ may consider, *inter alia*: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his

testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *See id.* If there is no evidence of malingering, the ALJ's reasons for discrediting the claimant's testimony must be "specific, clear and convincing." *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (quotation and citation omitted). The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

Here, the ALJ found that the medical evidence confirmed the existence of medical impairments which could reasonably be expected to cause some of Plaintiff's alleged symptoms. Tr. 25. However, the ALJ did not credit Plaintiff's testimony about the intensity, persistence, and limiting effects of the symptoms. *Id*. Rather, the ALJ concluded that "the objective evidence does not support the severity of symptoms and limitations [Plaintiff] has alleged." *Id*. There is no evidence of malingering in this case, and therefore the Court must ultimately determine whether the ALJ provided specific, clear and convincing reasons not to credit Plaintiff's testimony of the limiting effect of his symptoms. *Chaudhry*, 688 F.3d at 672. The Court concludes that the ALJ did provide specific, clear and convincing reasons.

To support its adverse credibility determination, the ALJ consulted

Plaintiff's medical records, summarized the relevant records, and cited to portions

of the record which were inconsistent with the severity of symptoms and

limitations Plaintiff alleged. First, the ALJ found that "[t]he medical records do

not support the degree of respiratory difficulty the claimant has alleged." Tr. 25.

The ALJ noted the Plaintiff had a history of coccidioidomycosis, underwent a right

upper lobectomy and had a collapsed lung for three months, and was diagnosed

with asthma and chronic obstructive pulmonary disease. Tr. 25-26. The ALJ

further observed, however, that the results of pulmonary function testing in August

2013 and October 2014 showed only mild to moderate airway obstruction with

normal lung volumes and diffusing capacity. Tr. 26. The ALJ also discussed

Plaintiff's large hiatal hernia and the possibility that the hernia was contributing to

Plaintiff's breathing complaints, but noted that imagining on July 22, 2015 showed

that Plaintiff's lungs were adequately expanded despite the presence of the hiatal

hernia. *Id*. The ALJ concluded that, "[r]egardless of whether the hernia is

contributing to the claimant's breathing complaints, the medical records show he

reported significant improvement in his shortness of breath with medications,"

citing numerous medical records dating from November 2013 to August 2015

where Plaintiff either reported an improvement in his breathing with medication or

denied any shortness of breath. *Id*. According to a report from July 21, 2015,

1  Plaintiff was even encouraged to exercise the equivalent of a brisk 45-minute walk

2  four days a week.  Tr. 26, 271.

3       These medical records are inconsistent with the degree of respiratory

4  difficulty claimed by Plaintiff.  "While subjective pain testimony cannot be

5  rejected on the sole ground that it is not fully corroborated by objective medical

6  evidence, the medical evidence is still a relevant factor in determining the severity

7  of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d

8  853, 857 (9th Cir. 2001) (citation omitted).  Such inconsistencies between

9  Plaintiff's alleged limitations and medical evidence provide a permissible reason

10 for discounting Plaintiff's credibility.  *See Thomas*, 278 F.3d at 958-59 ("If the

11 ALJ finds that the claimant's testimony as to the severity of her pain and

12 impairments is unreliable, the ALJ must make a credibility determination . . . [t]he

13 ALJ may consider . . . testimony from physicians and third parties concerning the

14 nature, severity and effect of the symptoms of which the claimant complains.")

15 (internal citations and modifications omitted).

16      Second, the ALJ discussed the degree of limitation caused by the loss of

17 Plaintiff's left eye.  Tr. 26.  The ALJ observed that, although Plaintiff's left eye

18 was surgically removed following an injury, Plaintiff was able to return to work

19 despite the impairment.  *Id*.  The ALJ noted that Plaintiff testified that he had

20 issues with depth perception, yet Plaintiff was able to drive, use a computer

keyboard, and read despite having only one eye. Tr. 26-27. The ALJ further

observed that Plaintiff's right eye vision was apparently normal with correction.

*Id*. Finally, the ALJ noted that Plaintiff's function report indicated that his

impairments affected his sight, but not his ability to use his hands. Tr. 205. Based

on this evidence, the ALJ concluded that Plaintiff "can perform tasks requiring

depth perception on an occasional basis and should avoid even moderate exposure

to hazards such as moving machinery and unprotected heights." Tr. 27.

Evidence about daily activities is properly considered in making a credibility

determination. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). In evaluating

credibility, an ALJ may properly consider "whether the claimant engages in daily

activities inconsistent with the alleged symptoms." *Molina*, 674 F.3d at 1113

(quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007)). "Even

where those activities suggest some difficulty functioning, they may be grounds for

discrediting the claimant's testimony to the extent that they contradict claims of a

totally debilitating impairment." *Id*. The ALJ did not err in concluded that certain

activities Plaintiff engages in, such as driving, typing, and reading, demonstrate

greater exertional abilities than the severe limitations claimed by Plaintiff.

Finally, the ALJ considered Plaintiff's subjective complaints relating to his

sleep apnea. Tr. 27. The ALJ noted that Plaintiff was diagnosed with mild

obstructive sleep apnea in October 2014. *Id*. Plaintiff testified that he suffered

from fatigue, causing him to take lots of breaks and naps. Tr. 25. However, the ALJ noted a medical record from January 8, 2015, which reported Plaintiff was feeling better with a CPAP, and a medical report on August 6, 2015 that showed Plaintiff's apnea hypopnea index was normal and Plaintiff was no longer complaining of fatigue. Tr. 27. "Given the improvement with CPAP therapy and the absence of objective evidence of concentration difficulties," the ALJ concluded that "the sleep apnea would not prevent claimant from performing light exertional activity and does not limit his cognitive function." *Id.* As discussed, the inconsistencies between Plaintiff's alleged limitations and medical evidence provide a permissible reason for discounting Plaintiff's credibility. *Thomas*, 278 F.3d at 958-59.

In sum, the ALJ recognized Plaintiff's impairments in assigning a light work RFC, but did not credit Plaintiff's subjective claims to the full extent that Plaintiff claimed he was severely limited in his functionality. Tr. 25. The ALJ's decision provides specific, clear and convincing reasons supported by substantial evidence sufficient for this Court to conclude that the adverse credibility determination was not arbitrary.

### D. Step Five Analysis

Plaintiff contends that the ALJ erred by providing an incomplete hypothetical to the vocational expert at Plaintiff's hearing. ECF No. 10 at 16-17.

The ALJ provided the following hypothetical to the vocational expert:

> We're looking at an individual who would be limited to a light exertional as defined. As far as climbing, no ladders, occasional stairs, balancing at frequent, stooping at occasional, kneeling at occasional—I'm sorry—kneeling at frequently, crouching at occasional, crawling at frequently and as far as environmental, need to avoid concentrated exposure to extreme cold, would need to avoid concentrated exposure to heat, avoid concentrated exposure to vibration and avoid even moderate exposure to fumes, odors, dust and gases, poor ventilation, also avoid even moderate exposure to hazards such as machine—moving machinery or unprotected heights. The other issue that we would have for this hypothetical individual would refer to vision. Essentially, there is no vision in the left eye. This would affect depth perception to occasional. It would limit field of vision on the left. And let's see. I think they didn't limit any near or far.

Tr. 67-68. The expert relied on this hypothetical that Plaintiff was capable of working as a small parts assembler, cafeteria attendant, or mailroom clerk. Tr. 68.

An ALJ need not include limitations in the hypothetical that the ALJ has concluded are not supported by substantial evidence in the record. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1163-64 (9th Cir. 2001). Plaintiff contends that the ALJ erroneously excluded the following limitations from the hypothetical, which he argues are supported by substantial evidence: (1) Plaintiff is restricted to sedentary work, as identified in Dr. Schmitz's opinion; and (2) Plaintiff's need for numerous 5-10 minute breaks throughout the day. ECF No. 10 at 16-17.

As discussed, the ALJ did not err in excluding these alleged limitations in formulating Plaintiff's RFC. As such, the ALJ did not err in excluding them from

the hypothetical. The ALJ considered the medical evidence and Plaintiff's testimony regarding the asserted limitations. The ALJ ultimately concluded that the evidence only established that Plaintiff had some, but not all, of the alleged limitations. Tr. 25. These were the limitations the ALJ found supported by substantial evidence in the record. The ALJ concluded further limitations were not supported by the record and, as articulated above, this conclusion was not erroneous. The hypothetical the ALJ used was "accurate, detailed, and supported by the medical record," and the ALJ was then permitted to rely on the vocational expert's testimony. *See Tackett*, 180 F.3d at 1101.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 10) is **DENIED**.

2. Defendant's Motion for Summary Judgment (ECF No. 14) is **GRANTED**.

The District Court Executive is hereby directed to file this Order, enter Judgment for Defendant, provide copies to counsel, and **CLOSE** this file

**DATED** September 27, 2018.



THOMAS O. RICE
Chief United States District Judge